IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| LARRY G. DOCKERY | : | CIVIL ACTION |
| Plaintiff | : | |
| | : | |
| v. | : | NO. 17-4114 |
| | : | |
| STEPHEN E. HERETICK, et al. | : | |
| Defendants | : | |

**MEMORANDUM OPINION**

DAVID R. STRAWBRIDGE
UNITED STATES MAGISTRATE JUDGE                                      January 27, 2021

## I.     INTRODUCTION

Presently before the Court is Plaintiff's Larry Dockery ("Plaintiff" or "Dockery") motion to compel responses from Defendant Stephen Heretick ("Defendant" or "Heretick") to interrogatories and document requests. As the facts of this case are well known to the parties, we present here only those facts relevant to the current motion.[1]

The parties previously exchanged an initial round of discovery responses and document production, which "included a sample production of 10% of the thousands of total files that Heretick handled." (Doc. 244 at 2.) Following that initial round of discovery, on August 14, 2020, Plaintiff served Heretick with a series of interrogatories and document requests, which are the subjects of the current dispute. (Doc. 244-1) (the "August 14 Discovery Requests.") Heretick

---

[1] By way of brief background, this motion to compel addresses only discovery sought from Heretick, not his co-defendants 321 Henderson Receivables, LLC ("Henderson") or J.G. Wentworth Originations, LLC ("Wentworth"). Plaintiff's central allegation here is that Heretick, Wentworth, and Henderson created "a scheme to violate the statutory protections afforded to Plaintiff and other members of the class who were sellers of structured settlement annuities." (Doc. 244 at 1.) Plaintiff alleges that this scheme operated to induce holders of annuities to sell them at deeply discounted rates by depriving sellers of their statutory right to independent counsel when entering the sale agreements. (*Id.* at 1–2.)

1

originally objected to all of Plaintiff's discovery requests and "provided virtually no information in response to interrogatories and zero documents." (Doc. 244 at 3.) On December 7, 2020, Plaintiff filed this motion to compel following the parties' failure to resolve the issues through meet and confer discussions. (Doc. 244.) On December 14, 2020, Judge Kenney referred the motion to us for resolution. (Doc. 248.) Defendant submitted its response to the motion on December 23, 2020, (Doc. 250), and at same time submitted supplemental responses to its original responses to the August 14 Discovery Requests (Doc. 250-4.) In lieu of submitting a reply brief, Plaintiff requested a discovery conference, which we held with counsel on January 15, 2021. (Doc. 255.)

At that conference, counsel for the parties agreed that it would be beneficial to hold a preliminary deposition of Heretick to get further clarification particularly concerning the "identification and availability of documents." (Doc. 255.), We directed counsel to schedule that deposition as early as practicable.[2] (*Id.*) We further ordered Plaintiff to submit a reply brief, which he did on January 22, 2021. (Doc. 257.) Here, we resolve as many issues as are appropriate, given that Heretick's preliminary deposition has yet to occur. In doing so, we consider Plaintiff's motion and supporting memorandum (Doc. 244), Defendant's response in opposition to the motion (Doc. 250), Defendant's supplemental responses (Doc. 250-4), and Plaintiff's reply in support of the motion (Doc. 257).

---

[2] In line with our directive to schedule his deposition as early as practicable, we acknowledge that Heretick may have limited availability given his position as a Virginia state legislator and the timing of the Virginia legislative session. We expect that the parties will account for the scheduling of this deposition in connection with their current obligation under Judge Kenney's January 25, 2021 order (Doc. 258) to propose an updated scheduling order on or before January 29, 2021.

## II. LEGAL STANDARD

Generally, all relevant, non-privileged information is discoverable. Fed. R. Civ. P. 26(b)(1). Information need not be admissible to be discoverable. *Id.* Rather, it must merely be "relevant to any party's claims or defenses and proportional to the needs of the case." *Id.* "Relevance in this context has been 'construed broadly to encompass any matter that could bear on, or that could reasonably lead to other matter that could bear on any issue that is or may be in the case.'" *United States v. Abbott Labs.*, 2016 WL 4247429, at *2 (E.D. Pa. Aug. 11, 2016) (quoting *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351 (1978)). "The scope of discovery is very broad, though it 'is not unlimited and may be circumscribed.'" *ITOCHU Int'l, Inc. v. Devon Robotics, LLC*, 303 F.R.D. 229, 231 (E.D. Pa. 2014) (quoting *Bayer AG v. Betachem, Inc.*, 173 F.3d 188, 191 (3d Cir. 1999)). "It is axiomatic that a trial court has broad discretion to fashion discovery orders." *Kuhns v. City of Allentown*, 264 F.R.D. 223, 227 (E.D. Pa. 2010). In fashioning such an order, we are mindful that the Third Circuit favors a policy of liberal discovery standards. *See, e.g.*, *Westchester Fire Ins. Co. v. Household Int'l, Inc.*, 167 F. App'x 895, 899 (3d Cir. 2006).

Federal Rule of Civil Procedure 33 allows the parties to serve written interrogatories on any other party. Fed. R. Civ. P. 33(a)(1). "Each interrogatory must, to the extent it is not objected to, be answered separately and fully in writing under oath." *Id.* (b)(3). Where a party fails to answer an interrogatory or provides an evasive or incomplete answer, the interrogating party may bring a motion to compel a sufficient answer. Fed. R. Civ. P. 37(a)(3)(b). The party resisting production bears the burden of persuasion and "'must show specifically' how the information requested 'is not relevant or how each question is overly broad, burdensome, or oppressive.'" *In*

*re Auto. Refinishing Paint Antitrust Litig.*, No. MDL 1426, 2006 WL 1479819, at *2 (E.D. Pa. May 26, 2006) (quoting *Josephs v. Harris Corp.*, 677 F.2d 985, 992 (3d Cir. 1982)).

Federal Rule of Civil Procedure 34 allows the parties to "serve on any other party a request within the scope of Rule 26(b) to produce . . . any designated documents." Fed. R. Civ. P. 34(a)(1)(A). In responding to a request for document production, "Rule 34 requires that a party served with a document request either produce the requested documents or state a specific objection for each item or category objected to." *Harcum v. Leblanc*, 268 F.R.D. 207, 209 (E.D. Pa. 2010). "Mere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." *Momah v. Albert Einstein Med. Ctr.*, 164 F.R.D. 412, 417 (E.D. Pa. 1996). Rather, the responding party must "state with specificity the grounds for objecting to the request" and "must state whether any responsive materials are being withheld on the basis of that objection." Fed. R. Civ. P. 34 (b)(2)(B)–(C).

### III. DISCUSSION

Our discussion, consistent with the organization in the parties' submissions, organizes each of the disputed discovery requests into one of eight broader issues. Within those broader issues, we analyze each disputed interrogatory or request for production of documents. We also note at the outset that the parties have agreed for the limited purpose of this discovery dispute that the interrogatories and requests for production sought are limited to the sample files Heretick has previously produced where applicable. We further note that Heretick must identify all documents via bates number where we determine that further document production or identification is necessary. *See* Accompanying Order.

### A. Issue 1: Information concerning draft affidavits Heretick supplied to class members

This issue includes **Interrogatory 1** and **Document Requests 1–5**. (Doc. 244 at 4.) **Interrogatory 1** provides as follows:

> *Identify each Affidavit of a seller ("Seller") of payments from a Structured Settlement Annuity ("Affidavit") that You had any role in drafting or editing by providing the name of the seller and the date upon which the Affidavit was executed, or producing all such affidavits and identifying them by bates number.*

Heretick originally objected to this interrogatory as overly broad, unduly burdensome, and irrelevant without providing any further explanation as to the basis for those objections. However, in his supplemental response, Heretick provided responsive information, stating that he drafted the affidavits but only until a particular date in 2004 (not yet identified), when Wentworth and Henderson began drafting the affidavits. Heretick asserted that, referring to the sample file production that has already occurred, "Plaintiff has the seller affidavits for the sample files for 2003 which were drafted by Heretick. Plaintiff also has the seller affidavits for 2004, some of which may have been drafted by Heretick." (Doc. 250 at 6.) Given that this interrogatory has been limited to the sample files already produced, this supplemental response further the narrows the dispute to those files from 2004 for which it is unclear whether Heretick drafted the affidavits.

Despite that the remaining scope of this dispute has been narrowed significantly, Heretick continues to object on two bases: (1) it is overly broad in that it is not limited to transactions involving Wentworth and Henderson, even though all putative class members transacted with one of those two entities; and (2) it seeks irrelevant information in that the mere fact that Heretick drafted the affidavits that sellers signed, and that he sent them to sellers and/or their

counsel, does not bear on whether sellers' counsel were independent. (Doc. 250 at 6.) We are not persuaded by either of Heretick's arguments.

Heretick's first objection is baseless, as Plaintiff has clarified in his motion to compel that he seeks only "information concerning draft affidavits supplied by Heretick *to class members*." (Doc. 244 at 4) (emphasis added). Given that all putative class members were involved in transactions with Wentworth or Henderson, Heretick's overbreadth objection on this ground is unavailing. Indeed, Plaintiff does not seek affidavits beyond those supplied to class members with this interrogatory. Second, while Heretick is correct that the fact that he drafted the affidavits does not *necessarily* lead to the conclusion that sellers' counsel was not independent, that information is clearly relevant for discovery purposes at this stage. As Plaintiff explains, this information goes "directly to the lack of independent legal representation during the process, and to Heretick's awareness of that lack of independent representation." (Doc. 244 at 4.)

Because this information is relevant and Plaintiff's request is not overly broad, Heretick must respond to the interrogatory to identify by bates number which affidavits he drafted within the sample files to the extent that any have not yet been identified.

The next discovery request within this issue is **Document Request 1**:

*For each Affidavit identified in response to Interrogatory 1 above, identify every source providing the factual assertions set forth in the Affidavit.*

Heretick originally objected to this document request "because it does not seek the production of documents but rather is an interrogatory." (Doc. 244-1.) He further objected to it as overly broad, unduly burdensome, and irrelevant. (*Id.*) However, in his supplemental response, Heretick identified "the source[s] of the information for the facts set forth in the affidavit[s]" as being "application materials filled out by the seller, the transaction documents, the disclosure statement, the Petition for Court Approval, the notice of the hearing for the transaction, and the

6

proposed order for approval of the transaction." (Doc. 250-4 at 5–6.) Because Heretick's supplemental response was filed subsequent to Plaintiff's motion to compel, the motion does not address whether Plaintiff considers this supplemental response to be sufficient. Further, Plaintiff has not taken the opportunity to state whether Heretick's supplemental response is insufficient in his reply brief. Given that Plaintiff has not asserted any basis for considering the response insufficient, and that Heretick's answer appears on its face to be responsive, we will not order any further response at this stage. However, if Plaintiff seeks further specificity on this question, he may pursue it at the yet to be scheduled discovery deposition of Heretick.

The next discovery request within this issue is **Document Request 2**:

*To the extent not already produced, produce each Affidavit identified in response to Interrogatory 1.*

The parties appear to have reached a resolution of this dispute, as these discovery requests have been limited to the sample files Heretick has *already produced*, and this request merely seeks affidavits "*to the extent not already produced*." However, to the extent any affidavits have been omitted from the sample files, Heretick must produce them. As discussed above in relation to Interrogatory 1, this document request seeks relevant information that goes to the alleged "lack of independent legal representation during the process, and to Heretick's awareness of that lack of independent representation." (Doc. 244 at 4.)

The next discovery requests within this issue are **Document Requests 3 and 4**, which seek similar subject matter: drafts of sellers' affidavits. These requests provide as follows:

**Document Request 3:** *Produce all drafts of each Affidavit identified in response to Interrogatory 1, and all documents referring or relating to any edit You made or other action You took relating to each such Affidavit.*

**Document Request 4:** *Produce all drafts of any Affidavit in Your possession which was not drafted by You, and for each such draft identify (i) The date upon which You received it; and (ii) The person from whom You received it.*

Heretick originally objected to these document requests as overly broad, unduly burdensome, and irrelevant. He further objected to these requests "to the extent [they] seek information . . . protected by the attorney client privilege and/or the work product doctrine." (Doc. 244-1 at 7.) However, Heretick has provided no explanation as to why these documents are privileged and has not supplied a privilege log to allow Plaintiff to contest the claim. Moreover, in his supplemental response, Heretick stated that drafts of the affidavits, whether prepared by him or someone else, to the extent they exist are, are contained in the sample files already produced. (Doc. 250-4 at 6–7.)

We find that, as Plaintiff argues, the draft affidavits are relevant and proportional to the needs of the case. Indeed, at the discovery stage, these drafts can certainly be said to bear on the independence or lack thereof of sellers' counsel and Heretick's potential knowledge of the same. Heretick asserts that he has already produced all relevant drafts within the sample files. However, Plaintiff argues that the sample files do not include many of the types of documents that would typically be involved in a drafting process of this nature. Accordingly, we expect that Plaintiff will pursue this line of questioning at Heretick's discovery deposition. However, to the extent he has not already, Heretick must respond fully and substantively to these requests by producing and identifying via bates number any drafts and related documents involved in preparing affidavits for putative class members whose transactions are represented within the sample files, whether prepared by him or someone else.

The final discovery request within this issue is **Document Request 5**:

*Produce all communications with any person at JG Wentworth or 321 Henderson referring or relating to any Affidavit.*

Heretick objected to this document request as overly broad, unduly burdensome, and irrelevant, as well as protected by attorney client privilege and/or the work product doctrine.

Unlike the document requests discussed above, Heretick has provided no supplemental response to Document Request 5. Thus, his response is plainly insufficient, as "[m]ere recitation of the familiar litany that an interrogatory or a document production request is 'overly broad, burdensome, oppressive and irrelevant' will not suffice." *Momah*, 164 F.R.D. at 417. In his response to the motion, Heretick states that the communications Plaintiff seeks here are already contained in the sample files. However, Plaintiff disputes this assertion and states that the sample files "contain not a single email." (Doc. 257 at 3.)

We find that the communications sought are relevant and within the scope of discovery. Indeed, Plaintiff's central allegation in this case is that Defendants Heretick, Wentworth, and Henderson operated in conjunction to deprive sellers of independent counsel. Communications between the three Defendants, which Plaintiff seeks here, could obviously shed light on the merit and veracity of that allegation. Heretick must therefore produce and identify via bates number any responsive communications related to the transactions represented in the sample files to the extent they are not privileged. If Heretick wishes to assert that the relevant communications are privileged, he must state the specific grounds supporting that assertion and provide a privilege log for any responsive documents that have been withheld. Again, we expect that Plaintiff will pursue questions regarding the existence of these communications at Heretick's discovery deposition.

**B. Issue 2: Heretick's communications with counsel for the sellers of annuities**

This issue includes **Interrogatory 2** and **Document Request 6**. Because Heretick's response to Document Request 6 merely referred Plaintiff to his response to Interrogatory 2, it is appropriate to discuss the two requests together.

> **Interrogatory 2**: *Identify all communications between You and any Seller, any person purportedly acting as counsel to any Seller, or any person who signed an estoppel letter relating to any Seller.*
>
> **Document Request 6**: *To the extent not already produced, produce all communications identified in response to Interrogatory 2 above.*

Heretick responded to these requests by asserting that the burden of identifying the requested communications "would be substantially the same for Plaintiff as it would for [him]," and he referred Plaintiff to documents he previously produced "from which the requested communications can be ascertained."[3] (Doc. 250-4 at 2–3.) Conversely, Plaintiff argues that the burden of ascertaining the communications would be not substantially the same for either party, as Plaintiff "does not know all of the communications that took place" between the sellers' and their lawyers and that "only Hertick has this information." (Doc. 244 at 5.) We agree with Plaintiff.

Federal Rule of Civil Procedure 33 permits a party to respond to an interrogatory by pointing to business records from which the answer to the interrogatory can be ascertained if the "burden of deriving or ascertaining the answer is substantially the same for the party serving the interrogatory as for the party served." Fed. R. Civ. P. 33(d). However, a party answering an interrogatory in this manner must "specify the records . . . in sufficient detail to permit the interrogating party to locate and to identify, as readily as can the party served, the records from which the answer may be ascertained." *Id.* Here, Heretick has provided no further detail as to which records contain the communications Plaintiff seeks other than to assert they can be ascertained from "documents previously produced." Without further explanation or specificity from Heretick, his response that the burden of identifying the relevant communications would be

---

[3] Heretick also objected to these requests as overly broad, unduly burdensome, and irrelevant. (Doc. 250-4 at 2–3.) However, as discussed above, these blanket objections without explanation are insufficient and will not be sustained.

substantially the same is insufficient. Heretick must respond to these requests in a manner consistent with his obligations under Rule 33 and identify the relevant documentation via bates number.

### C. Issue 3: Heretick's efforts to determine independence of sellers' counsel or whether sellers had been advised to obtain counsel

This issue includes **Interrogatories 3 and 4**. **Interrogatory 3** provides as follows:

*For each instance in which You represented to a court that an attorney for a Seller was independent, including but not limited to each instance in which You filed a document with a court making such a representation, identify all steps You took to determine whether the attorney providing legal advice to any Seller was in fact independent.*

In response to this interrogatory, Heretick stated that he "did not make a representation about the independence of Seller's lawyer" and that he "did not investigate the veracity of statements by sellers or lawyers for the sellers about the sellers' lawyer's independence." (Doc. 244-1 at 3–4.) With regard to the first portion of Heretick's response, that he "did not make a representation" about the independence of sellers' lawyers, it was made clear at the January 15, 2021 discovery conference that the parties' dispute centers on what constitutes making a "representation" to a court. However, this dispute is inconsequential in light of the second portion of Heretick's response, that he "did not investigate the veracity of statements . . . about the sellers' lawyers' independence." Regardless of whether Heretick's conduct should be characterized as having made a "representation," this second portion of the response answers the substance of the interrogatory. That is, Heretick states plainly that he did not investigate whether the sellers' lawyers were independent. He argues that he has "fully responded to this interrogatory." (Doc. 250 at 8.) We agree. No further response to this interrogatory is required at this stage.

11

Next, **Interrogatory 4** provides as follows:

*For each instance in which You represented to a court that a Seller had been advised to seek independent advice, identify all steps You took to determine whether the Seller had in fact been so advised.*

In response, Heretick objected to the interrogatory as irrelevant, overly broad, and burdensome. But he did, nonetheless, identify the following steps he took to determine whether a seller had been advised to seek independent counsel: He states that he "reviewed the executed transaction documents, the executed disclosure statements, the executed acknowledgements, or waivers of professional advice and/or letters from Seller's lawyer which included the sellers' written representation or acknowledgement that he had been informed in writing to seek independent professional advice." (Doc. 244-1 at 4.) Here again, Heretick argues that he has fully responded to the interrogatory. We agree. Plaintiff did not articulate in the motion to compel or his reply brief the reasons why he considers this response to be insufficient. Rather, Plaintiff only reiterated that the interrogatory seeks relevant information. (Doc. 244 at 5.) While we agree with Plaintiff that the information sought is relevant, we see no argument presented as to why Heretick's response is not sufficient, and we conclude that no further response is required at this time.

### D. Issue 4: Whether sellers' counsel attended hearings on petitions to sell clients' annuities

This issue includes only **Interrogatory 5**. That interrogatory stated:

*Identify each instance in which an attorney for a Seller appeared at any hearing on the Petition relating to sale of that Seller's annuity payments.*

Heretick originally responded to this interrogatory by stating that he "recalls instances in which a seller's attorney appeared for the hearing . . . but does not recall the specific sellers or transactions when this occurred." (Doc. 250-4 at 3.) In his supplemental response, Heretick

12

provided the name of one attorney who he recalled as having appeared at the hearings, but stated that he is unable to "recall the name of sellers or the specific transactions where [that attorney] appeared." He further stated that he could not recall any other attorneys who attended hearings.[4] (*Id.*) Plaintiff argues that Heretick's response was "wholly vague and general" and insufficient to enable Plaintiff to "examine him efficiently and fully on the issue at his deposition." We agree.

Indeed, Heretick's responses here are insufficient. A party cannot fully answer an interrogatory merely by stating that he or she cannot recall the information sought. Rather, for their answer to be sufficient, a party that "cannot recall" must also set forth the efforts made to obtain the information sought. *See Oke v. Crowuther*, 2019 WL 4393388, at *2 (W.D. Pa. Sept. 14, 2019) (citing *Hansel v. Shell Oil Corp.*, 169 F.R.D. 303 (E.D. Pa. 1996)). Because Heretick has merely stated that he cannot recall without providing any information as to what efforts he made to ascertain the requested information, his response is insufficient. Heretick must respond to this interrogatory fully in compliance with his obligations under Fed. R. Civ. P. 33, which includes at the very least, specifying what efforts he made to obtain the information that he states that he "cannot recall."

### E. Issue 5: Whether Heretick sought to limit public access to any petitions he filed

This issue includes only **Interrogatory 6**, which states:

> *Identify each instance in which You sought to seal or [sic] any portion of the court records relating to any Petition.*

Heretick responded to this interrogatory with a one-word answer: "None." That is, Heretick answered that there are no instances in which he sought to seal any portion of the court

---

[4] In his response, Heretick also put forth the usual objections to relevance, burden, and overbreadth. (Doc. 250-4 at 3.) As discussed throughout, these blanket objections without any explanation cannot constitute a sufficient response. Further, we find that the information Plaintiff seeks is relevant and within the scope of discovery.

records relating to any petition. Plaintiff seeks to compel a more detailed response that includes "a clear statement" as to whether Heretick "made any effort . . . to limit public access to such files (whether by a process called 'sealing' or something else)." (Doc. 244 at 6.) In response, Heretick maintains that his one-word response constitutes a full answer to Plaintiff interrogatory. We agree.

Plaintiff's interrogatory asked a specific question: whether Heretick "sought to *seal* any portion of the court records relating to any Petition." (Doc. 244-1 at 5) (emphasis added). Heretick answered this specific question fully. Now, in his motion to compel, Plaintiff seeks to have Heretick answer a related but different and broader question: whether Heretick "made any effort . . . to limit public access to such files." Plaintiff cannot move to compel an answer to a question that he has not asked in his interrogatory. If Plaintiff desired an answer to the broader question that he has posed in his motion to compel, he could have and should have posed that question in the interrogatory in the first place. Heretick has fully answered the narrow question presented here. No further response is required at this stage.

### F. Issue 6: Payments Heretick received for the petitions he filed for class members

This issue includes only **Interrogatory 8**, which provides as follows:

*State the amount of money You were paid for each Petition You filed, and the date upon which You were paid.*

Heretick initially responded to this interrogatory by providing information regarding only the payments he received in transactions involving Plaintiff.[5] (Doc. 250-4 at 4.) Plaintiff then sought to compel Heretick's payment information regarding all petitions Heretick filed. (Doc. 244 at 6.) However, this dispute has apparently been resolved through Heretick's supplemental

---

[5] Here again, Heretick has included the familiar recitation of blanket objections to relevance, burden, and overbreadth. These objections are insufficient, and we find that the information Plaintiff seeks through this interrogatory is relevant and within the scope of discovery.

14

response. In his supplemental response, Heretick stated that he "will produce documents reflecting payments [he] received from [Wentworth and Henderson] for the petitions he filed on their behalf in the Portsmouth, Virginia Circuit Court." (Doc. 250-4 at 4.) On its face, this supplemental response seems to resolve any remaining dispute with regard to this interrogatory. Further, because Plaintiff has not taken the opportunity to alert us to any remaining dispute through their reply brief (Doc. 257), we will consider this issue to be resolved upon Heretick's fulfillment of his stated intention to produce the responsive documents, and will require no further response at this point.

### G. Issue 7: Whether Heretick illegally filed petitions in Virginia for out-of-state sellers

This issue includes **Interrogatory 9** and **Document Request 11**. Both of these discovery devices seek information regarding petitions Heretick allegedly filed for out-of-state sellers in violation of Virginia law. **Interrogatory 9** provides as follows:

*Identify all communications between You and Katrina Barnes-Grier.*

Barnes-Grier was identified in Plaintiff's Second Amended Complaint as an individual who did not reside in Virginia but for whom Heretick filed a petition representing that she did reside in Virginia. (Doc. 99 at 30.) However, Barnes-Grier did not transact with Wentworth or Henderson and is therefore not a putative class member. (Doc. 244 at 6–7.) Heretick objected to this interrogatory as irrelevant in that it concerned a transaction that did not involve a putative class member. (Doc. 244-1 at 6.) However, one of Plaintiff's central allegations is that Heretick schemed to file petitions for out-of-state sellers in violation of Virginia law, and Barnes-Grier's petition may represent an instance where Heretick did exactly what Plaintiff alleges. (Doc. 244 at 6–7.) Heretick's communications with Barnes-Grier are therefore relevant to whether the alleged

15

scheme to file petitions for out-of-staters in violation of Virginia law existed, regardless of whether Barnes-Grier's specific petition was a transaction that involved Wentworth or Henderson. This interrogatory seeks relevant information, and Heretick must respond to it fully by identifying the relevant documents via bates number.

The next discovery request within this issue is **Document Request 11**:

*For each instance in which You represented that a Seller was a resident of the Commonwealth of Virginia, identify all steps You took to determine whether that representation was true.*

Heretick argues that the motion to compel should be denied with respect to Document Request 11 in that this "document request" does not actually seek production of any documents and is instead functionally an interrogatory.[6] (Doc. 250 at 13.) We agree with Heretick that Plaintiff's request is inaccurately characterized as a document request. Indeed, it is an interrogatory "masquerading" as a document request. *See Three Bros. Supermarket Inc. v. United States*, 2020 WL 5231575, at *3 (E.D. Pa. Sept. 1, 2020). "To succeed on a motion to compel discovery . . . a party must first prove that it sought discovery in the manner required by the rules of procedure." *Id.* (quoting *Camiolo v. State Farm Fire & Cas. Co.*, 334 F.3d 345, 360 (3d Cir. 2003)). Here, Plaintiff's "document request" does not actually seek the production or inspection of any documents in compliance with Fed. R. Civ. P. 34. Plaintiff has therefore not met the requirement that he "first prove that [he] sought discovery in manner required by the rules," *i.e.*, by seeking the information via the proper discovery tool. *Id.* Accordingly, the motion to compel is denied with regard to Document Request 11.

---

[6] Heretick further argues that this information is irrelevant in that "putative class claims cannot be based on the filing of petitions [for out-of-state residents in violation of Virginia law] because Mr. Dockery, the class representative is a Virginia resident." (*Id.*) However, we need not and do not address Heretick's relevance argument here, as we find that his first argument is sufficient to deny the motion to compel with respect to Document Request 11.

**H. Issue 8: Heretick's retainer agreements with Wentworth and Henderson**

This issue includes only **Document Request 10**, which states:

*Produce all retainer letters between You and J.G. Wentworth and or 321 Henderson.*

Heretick initially objected to this document request as irrelevant and protected by the attorney client privilege.[7] (Doc. 244-1 at 9.) In his response to the motion, Heretick further argues that his "retainer agreements with Wentworth or Henderson have no bearing on any of the elements of the claims at issue." However, a key issue for Plaintiff's claims is his allegation that Heretick formed associations with Wentworth and Henderson to carry out the alleged scheme to defraud sellers of their annuities. As Plaintiff explains, Heretick's retainer agreements are relevant to show the scope of "what he was hired to do" for Wentworth and Henderson. This information could clearly bear on whether Heretick was hired by either or both of those entities to implement the schemes that Plaintiff has alleged.

Further, as Plaintiff points out, Heretick's claims of privilege here are without merit. Indeed, "the attorney client privilege does not shield fee arrangements." *Montgomery Cty. v. MicroVote Corp.*, 175 F.3d 296, 304 (3d Cir. 1999). Only under "unusual circumstances," none of which have been shown to exist here, does the attorney client privilege "shield the fact of retention, the identity of clients, and fee arrangements." *In re Grand Jury Investigation*, 631 F.2d 17, 19 (3d Cir. 1980) (internal citations omitted). This information Document Request 10 seeks

---

[7] Heretick's response to the document request specifically refers to Virginia Rule of Professional Conduct 1.6. That Rule provides, in relevant part: "A lawyer shall not reveal information protected by the attorney-client privilege under applicable law or other information gained in the professional relationship that the client has requested be held inviolate or the disclosure of which would be embarrassing or would be likely to be detrimental to the client . . . ." VA. RULES OF PROF'L CONDUCT R. 1.6.

17

is therefore relevant and not protected by privilege. Accordingly, Heretick must fully respond to the document request in compliance with his obligations under Fed. R. Civ. P. 34.

### IV.     CONCLUSION

Relevance in the discovery context has been "construed broadly." *Oppenheimer Fund*, 437 U.S. at 351. "Discovery requests may be deemed relevant if there is any possibility that the information may be relevant to the general subject matter of the action." *CedarCrestone Inc. v. Affiliated Computer Servs. LLC*, 2014 WL 3055355, at *4 (M.D. Pa. July 3, 2014) (quoting *Foster v. Berwind Corp.*, 1990 WL 209288, *6 (E.D. Pa. Dec.12, 1990)). We find that the information Plaintiff seeks through his motion to compel is generally relevant, within the broad scope of discovery, and satisfies the liberal discovery standards applied in the Third Circuit. Thus, Heretick must provide sufficient responses, as described above throughout, to the extent we have found he has not already done so. Our order follows.